IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | |
|---|---|
| KRISTEN STENSON : | |
| : | |
| *Plaintiff,* : | |
| : | |
| v. : | Civil Action No. |
| : | |
| THE CONSUMER SATISFACTION : | |
| TEAM, INC. : | **JURY TRIAL DEMANDED** |
| : | |
| *Defendant.* : | |

## CIVIL ACTION COMPLAINT

Plaintiff Kristen Stenson files this Civil Action Complaint against Defendant The Consumer Satisfaction Team, Inc. and in support thereof alleges as follows:

## INTRODUCTION

1. Plaintiff Kristen Stenson worked for approximately five years as an Organizational Development Training Specialist for The Consumer Satisfaction Team, Inc.

2. Throughout her employment, Ms. Stenson was sexually harassed by another employee of CST. Although Ms. Stenson repeatedly complained to her supervisors, CST did not investigate or take remedial actions to address the issue.

3. When Ms. Stenson again raised a complaint of sexual harassment on August 1, 2024 regarding incidents that had occurred earlier that day, the Executive Director of CST summarily dismissed Ms. Stenson's concerns and fired her immediately.

4. CST then assigned the same employee who had sexually harassed Ms. Stenson to escort her out of the building and to her car.

5. Ms. Stenson therefore brings this civil action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for sexual harassment and retaliation.

1

## PARTIES

6. Plaintiff Kristen Stenson is an Asian female who resides in Philadelphia, Pennsylvania.

7. Ms. Stenson graduated with a Bachelor of Science from West Chester University. She also holds a Master of Social Policy and Practice from the University of Pennsylvania, and a Master of Science in Nonprofit Leadership and Management from The Wharton School of the University of Pennsylvania.

8. From November 19, 2019 until August 1, 2024, Plaintiff was employed with The Consumer Satisfaction Team, Inc. ("CST") in the Behavioral Health Training and Education Network ("BHTEN") program of CST.

9. CST is a nonprofit peer-run organization that supports behavioral health and substance use recovery through education, training, and community outreach. It operates under contract with the City of Philadelphia and other public entities.

10. BHTEN is a part of the CST organization that performs trainings and other programming for local behavioral health professionals on topics related to a variety of public health issues. BHTEN also provides programming related to managing the finances and operations of non-profit organizations.

11. At all material times, CST had more than fifteen full-time employees and was an employer withing the meaning of Title VII.

12. At all material times, Ms. Stenson was an employee within the meaning of Title VII.

**JURISDICTION, VENUE, AND EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. This Court has subject matter jurisdiction based on federal question jurisdiction under 28 U.S.C. § 1331.

14. Venue is proper in this district under 28 U.S.C. § 1391(b) because CST's principal place of business is located at 520 N. Delaware Avenue, 7th Floor, Philadelphia, PA 19123, and the events giving rise to the cause of action occurred in this district.

15. On January 13, 2025, Ms. Stenson timely filed a charge of discrimination, Charge No. 530-2024-08904 with the Equal Employment Opportunity Commission ("EEOC"), which was also dual filed with the Pennsylvania Human Relations Commission ("PHRC").[1]

16. Ms. Stenson's Charge stated that she suffered harassment, discrimination, and retaliation based on her sex.

17. On July 31, 2025 the EEOC issued Ms. Stenson a notice of her right to sue, and this case has been brought within 90 days of receipt.

18. Ms. Stenson has exhausted her administrative remedies under Title VII.

**FACTUAL ALLEGATIONS**

**Job Background**

19. On November 19, 2019, Ms. Stenson was hired by the Consumer Satisfaction Team, Inc., as an Organizational Development Training Specialist ("Organizational Specialist") for the BHTEN program.

---

[1] Plaintiff intends to amend the Complaint to add claims under the Pennsylvania Human Relations Act once her state-level administrative remedies have been exhausted. Such claims are reserved and fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

20. As the Organizational Specialist, Ms. Stenson researched and developed curricula and training modules with a focus on business skills and financial literacy within the nonprofit sphere to support behavioral health nonprofits in the Philadelphia area.

21. Ms. Stenson developed trainings on topics such as change management, strategic planning, organizational development, logic models, and administrative supervision training. She then submitted these curricula to accrediting agencies and acquired approvals so that the courses could qualify as continuing education units for behavioral health specialists.

22. At the time of her hiring, Ms. Stenson reported to Abigail Pol, who was the Program Director of BHTEN. Ms. Pol reported to Josephine ("Jody") Barilotti, who was the Executive Director of CST.

23. When Ms. Pol departed CST in or around December 2022, Ms. Stenson then reported to Leah Mundy-Maher, who replaced Ms. Pol as the Program Director of BHTEN.

24. Ms. Stenson received consistently positive feedback from her supervisors and frequently received the highest available rating on her annual performance evaluations.

25. Based on her strong performance, on March 5, 2023 Plaintiff was given the role of Contract Manager in addition to her other existing responsibilities.

26. The new position included a significant number of new duties, including serving as a liaison between BHTEN, companies, and governmental departments and managing the execution of new client contracts.

27. In consideration for her additional responsibilities, Ms. Stenson received a raise.

### Ms. Stenson Was Subjected To, And Repeatedly Reported, Sexual Harassment, But CST Took No Action

28. From the outset of her employment with CST, Robert Bower from the CST facilities team engaged in inappropriate conduct towards Ms. Stenson. In December 2019 and

thereafter Mr. Bower would stare at Ms. Stenson for extended periods of time, and would also move his head and eyes up and down in an obvious manner, looking at her entire body.

29. In or around December 2019, Ms. Stenson complained to Ms. Pol about Mr. Bower's behavior. On information and belief, Ms. Pol reported the issue to Ms. Barilotti.

30. During the Covid-19 pandemic, employees of CST generally worked remotely, which provided Ms. Stenson a temporary reprieve from Mr. Bower's inappropriate actions.

31. When Ms. Stenson returned to in-office work in early 2022, she continued to experience uncomfortable and inappropriate interactions with Mr. Bower.

32. Mr. Bower would regularly stare at Ms. Stenson while looking her up and down.

33. Mr. Bower was also in the habit of turning around after walking past Ms. Stenson to stop and stare at her backside.

34. Despite Mr. Bower's office being located on a different floor of the building, he would spend significant amounts of time around Ms. Stenson's office, particularly when she was the only person in the office on her floor.

35. Mr. Bower would frequently walk into Ms. Stenson's office and the offices of her female colleagues unannounced.

36. Ms. Stenson used her office space as a place for changing into workout clothes.

37. Ms. Stenson was also upset by Mr. Bower's habit of entering unannounced because she was aware that other women in the office used their office space for pumping breast milk.

38. Due to these unannounced and intrusive entrances, Ms. Stenson and her colleagues feared that Mr. Bower would walk in on them while changing or breastfeeding.

39. In an effort to protect themselves, Ms. Stenson and her colleagues began to place "Do Not Disturb" signs on their office doors, which Mr. Bower ignored.

40. During special functions, such as holiday parties, Mr. Bower always commented on Ms. Stenson's outfits and how they appeared on her.

41. Mr. Bower touched Ms. Stenson on her lower back without permission in or around June 2024.

42. Ms. Stenson complained about Mr. Bower's interactions and behaviors on numerous occasions to her colleagues and supervisors.

43. Throughout 2022, Ms. Stenson complained about Mr. Bower's behaviors to Abigail Pol, who was the BHTEN Program Director at that time.

44. On information and belief, Ms. Pol reported these complaints to CST management, including but not limited to Meg King, who was the Head of Human Resources, and Ms. Barilotti. However, CST management did not take any investigatory or remedial action.

45. After Ms. Pol left in or around December 2022, Ms. Stenson continued to complain about these behaviors to her new supervisor, Leah Mundy-Maher, who replaced Ms. Pol as the BHTEN Program Director.

46. In or around November 2023, Ms. Mundy-Maher was present when Ms. Stenson walked past Mr. Bower. Mr. Bower turned around shortly thereafter and craned his head to look at Ms. Stenson's backside.

47. Ms. Mundy-Maher noted that such behavior was not okay, and Ms. Stenson requested that Ms. Mundy-Maher create a written record of what had occurred in her supervisor notes.

48. On information and belief, Ms. Mundy-Maher reported these complaints to other members of CST management.

49. Instead of initiating a fulsome investigation of Ms. Stenson's repeated and increasingly severe complaints, CST management blessed Mr. Bower's behavior by continuing to ask him to roam the halls and "check on" Ms. Stenson and her colleagues by having him barge into their offices or linger nearby.

### Ms. Barilotti Becomes Interim Director of BHTEN

50. On July 3, 2024, Ms. Barilotti sent an email to all BHTEN staff announcing that Ms. Mundy-Maher would be leaving CST, and that CST would begin interviewing for a new BHTEN Program Director.

51. The email also stated that, in the meantime, Ms. Barilotti would become the interim program director as well as supervisor for those who previously reported to Ms. Mundy-Maher, such as Ms. Stenson.

52. Throughout the remainder of July, Ms. Barilotti exerted an increasing amount of direct control over the BHTEN program to show her authority and quell any grievances or dissenting voices.

### Ms. Stenson Complained About Sexual Harassment Again And Was Terminated

53. On August 1, 2024, Ms. Stenson was subjected to sexual derogatory comments and objectifying stares from numerous men on her way into her office, including from the building's facilities team.

54. Then, as Ms. Stenson left the elevator and was walking to her office, she encountered Mr. Bower. When Ms. Stenson turned around, she saw that Mr. Bower had turned to look at her backside.

55. At around 10:00 AM, Ms. Stenson reached out to her colleagues Kyle Dempsey, Akim Cooper, and Elizabeth Harrison – who were all part of the BHTEN administrative team –

about the inappropriate comments she had experienced on her way into the office, and Mr. Cooper assured Ms. Stenson that he would let Ms. Barilotti know what happened.

56. Ms. Stenson had a previously scheduled meeting with Ms. Barilotti, Aleksandra Berkoff (Fiscal Director of CST), and Elizabeth Harrison (Associate Director of BHTEN) at 1:00 PM. The purpose of the meeting was to discuss ongoing and potential contracts, and how to handle the staffing of upcoming trainings due to the recent termination of a trainer at BHTEN.

57. After Ms. Berkoff left the meeting, Ms. Barilotti requested that Ms. Stenson stay to discuss another matter.

58. Ms. Barilotti stated that she understood that Ms. Stenson had been complaining recently, first about cameras that had been placed in common areas and now about sexual harassment.

59. Ms. Barilotti said it was her understanding that one of the men who commented on Ms. Stenson's appearance earlier that day had been talking about Ms. Stenson's hair and not her body.

60. Ms. Barilotti went on to say that she thought Ms. Stenson was complaining about Mr. Bower's behavior too much. Ms. Barilotti explained that she did not believe Ms. Stenson's complaints about Mr. Bower because Ms. Barilotti had known Mr. Bower for a long time.

61. When Ms. Stenson explained that she had a different experience than Ms. Barilotti with respect to Mr. Bower, Ms. Barilotti became irate and informed Ms. Stenson that she was terminated effective immediately.

62. When Ms. Stenson went downstairs to gather her belongings and say goodbye to her colleagues, she was intercepted by Mr. Bower, whom she had just complained about, and Ms.

King. Mr. Bower and Ms. King told her to pack up her things and then, after refusing to allow Ms. Stenson to say goodbye to her colleagues, escorted her out to her car.

### **CST's Retaliatory Actions Have Continued After Termination**

63.   Even after terminating Plaintiff's employment, CST has continued to retaliate against Ms. Stenson.

64.   When Ms. Stenson sought to collect unemployment compensation, CST challenged her right to unemployment compensation without any good faith argument.

65.   On information and belief, CST continues to interfere with Ms. Stenson's attempts to secure new employment.

66.   For instance, in or around July 2025, Ms. Stenson applied for a wealth advisory position at Merill Lynch and received a conditional offer pending a background check by a third-party vendor.

67.   Ms. Stenson was informed that one area of investigation would be why she was terminated from CST.

68.   On information and belief, CST provided an unjustified and retaliatory negative recommendation of Ms. Stenson to Merill Lynch and/or the third-party investigator performing the background investigation.

69.   Merrill Lynch rescinded its offer after Ms. Stenson failed to clear her background check.

70.   Until CST fired Ms. Stenson, she had never failed to clear a background check.

## COUNTS

### COUNT I: HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

71. Plaintiff repeats and incorporates by reference all of the preceding paragraphs of this Complaint, as if set forth at length herein.

72. Ms. Stenson suffered intentional discrimination based on her sex.

73. The discrimination was severe or pervasive.

74. The discrimination detrimentally affected Ms. Stenson and would detrimentally affect a reasonable person in like circumstances.

75. CST knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

76. CST showed malice and reckless indifference with respect to Ms. Stenson's federally protected rights.

77. CST is therefore liable for Ms. Stenson's hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

### COUNT II: RETALIATION IN VIOLATION OF TITLE VII

78. Plaintiff repeats and incorporates by reference all of the preceding paragraphs of this Complaint, as if set forth at length herein.

79. Ms. Stenson engaged in protected activity in raising complaints regarding sexual harassment she experienced to Defendant's supervisors and requesting that they take action.

80. CST's management, including but not limited to the Executive Director and Head of Human Resources, was aware that Ms. Stenson raised complaints regarding sexual harassment.

81. CST retaliated against Ms. Stenson because she raised complaints about sexual harassment by: (1) terminating Ms. Stenson's employment, (2) challenging Ms. Stenson's right to

unemployment compensation without a good faith argument, and (3) unjustly providing negative, retaliatory recommendations of Ms. Stenson to prospective employers.

82. CST showed malice and reckless indifference with respect to Ms. Stenson's federally protected rights.

83. CST has therefore retaliated against Ms. Stenson for raising complaints about sexual harassment in violation of Title VII of the Civil Rights Act of 1964.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in her favor, and against Defendant, in the form of:

i. A declaratory judgment that Defendants' acts have violated Plaintiffs' rights as secured to them by law;

ii. Actual damages and compensatory damages;

iii. Punitive damages;

iv. Statutory penalties;

v. Attorneys' fees;

vi. Litigation costs;

H. Such additional relief as the Court deems just and proper under the circumstances.

Date:  October 28, 2025                    Respectfully submitted,

**GOLDSHAW GREENBLATT PIERCE LLC**

*/s/ John L. Hensler*
Kasturi Sen (PA Bar No. 209351)
John L. Hensler (PA Bar No. 329075)
Two Penn Center, Suite 1230
1500 JFK Boulevard
Philadelphia, PA 19102
(215) 978 -9090
*Attorneys for Plaintiff*